We'll call the last matter for argument this morning, which is Jeffrey Keith v. Commonwealth PA. Mr. Levin. Good morning, Your Honors. My name is Peter Levin. I represent the appellant, and I would like to reserve five minutes for rebuttal. And I hope Your Honors will not consider the fact that the audience has cleared out that my argument will be a bad argument. It's probably about us, not you. Thank you. If Your Honors please, and I'm sure you're familiar with the facts of this case, is my client entered a NOLO plea. He was sentenced, and he argued in this habeas before this court, for which this court has granted a certificate of appealability, that his attorney was ineffective for failing to withdraw his NOLO plea prior to the sentence. Maybe I'm oversimplifying here, Mr. Levin, but doesn't this case come down to nothing more than a credibility determination by the common police court judge who did not believe Mr. Keith in his collateral attack, and credibility is a factual finding? If Your Honor please, my learned counsel for the Commonwealth and myself have been discussing that numerous times over the telephone, etc., because we couldn't decide why this court issued a certificate of appealability because we thought it was a factual issue. But I would beg to differ. I believe that the reason that this court did issue a certificate of appealability is because, for some reason, this court wanted brief the issue of whether the attorney was ineffective. Just for, I was on the motions panel. Okay. Just for your interest, the transcript was not available to us at the time the COA was granted. We did not have the transcript of the proceeding before the Commonwealth Police Court. Ah, okay. But could I take a different tack? Yes. I wanted you to understand that. Okay. Actually, it was a transcript of the testimony of the day that counsel had testified, not the day that Keith himself had testified. Okay. I mean, because I thought the same as Your Honor. I said, why did they issue a certificate of appealability? It's a factual situation. The attorney testified that Mr. Keith did not want to withdraw his plea at that point. So I figured there had to be some hidden reason. Not being on the panel that issued that, I asked the same question. Well, I've come up with an answer. No, you looked at who the panel was and said, there he goes again. Actually, being naive and out of state. They don't do those kinds of things in Massachusetts. I have come up with a reason, Your Honor. And I believe it's why this court asked us to look at the recent United States Supreme Court case. And what our argument is on behalf of Mr. Keith is that the attorney was ineffective for failing to withdraw the plea when the client asked her to do so. Even accepting everything that's in the transcripts and Mr. Keith said don't do it, et cetera. Her testimony is, and I believe it's uncontroverted, she said let's wait. And I believe that that was ineffective on her part. She knew that there were certain issues that had not been discussed with the defendant or the defendant said that they had not been discussed as far as to the possible sentence. And I believe she was ineffective for saying wait. And the reason I say that is because the standard in Pennsylvania is much more liberal had she withdrawn the plea before sentencing. And the question is why she didn't withdraw the plea before sentencing, knowing these things that she learned right around the sentencing hearing, that his sentence was going to be much higher. And that's what I tried to tie into the United States Supreme Court case. Although the facts were entirely different, I thought the reasoning that would apply to this case was, was the attorney wrong in the decision she made in telling Mr. Keith to wait? Well, let's assume that the attorney was. And let's assume that we enlarged the certificate of appealability so that we could hear this argument. Let's assume the attorney was wrong. How can you show prejudice? Well, the prejudice would be, and I think. How have you shown prejudice here in this record? Okay. Because the defendant asserted he was innocent. And according to the American Bar Standards and all other standards, a withdrawal of a guilty plea prior to sentence should be liberally granted. And the defendant would have then proceeded to trial. Now, she, I believe in her testimony to the lower court, she said that she told Mr. Keith, well, we'd have to renegotiate the plea, and it's not going to be as good for you if the plea is withdrawn. But she never discussed the fact that he could go to trial. And interestingly enough, he didn't plead. Didn't she tell him that the problem with going to trial was he faced going to trial on the burglary charge, and he could be found to be a career offender? Well, he'd be facing Pennsylvania's two strikes law. Correct, but. In addition to the fact that she testified to that, didn't the common police court judge credit that testimony? Yes, she did. And the common police court did credit her. But I think what Mr. Keith is saying, that he wanted to proceed to a trial. And what's interesting in this case is he never pled guilty. He pled NOLO, which indicated there must have been some doubts in his mind and the attorney's mind from the beginning as to whether he was actually innocent of these crimes. I mean, he was pleading NOLO, basically saying, I'm just saying that the Commonwealth could find me guilty of these crimes. But it would appear that he didn't actually say that he was going to, that he was guilty of the crimes, or he would have pled guilty. And his relief, which the relief he wanted, would be the relief to have a jury trial. So we would assert that that was the prejudice. To bring it under Loeffler, though, we would have to do a reverse Loeffler, right? Because in Loeffler wasn't the issue that somebody went to trial knowing that he had a favorable, a more favorable result potentially under a plea that wasn't communicated by counsel. Here you'd have to assume the reverse, that because the plea was ineffectively handled, he sacrificed the right to trial, which is not in the spirit of Loeffler, it seems to me, but not quite the. Right. Well, I guess I was looking more, the factual situation was entirely different. I guess I was looking at the reasoning on Loeffler and how Justice Kennedy was saying that I believe 94 or 96 percent of all cases, both between state and federal court, end up in guilty pleas. And we've got to give a lot of consideration to what takes place during a guilty plea and whether an attorney is giving ineffective advice. And down the road, who knows what's going to happen with guilty pleas. But I think this is a common... But isn't the problem, and that's why I ask you, how do you show prejudice? When you flip Loeffler around and you go to flip side of Loeffler, don't you have a much greater problem in trying to establish prejudice when you hadn't gone to trial? In Loeffler, he went to trial and he got three and a half times the amount he would have gotten if he had accepted the guilty plea. We don't know what would have happened in this case if Keith would have gone to trial. And therefore, it's a difficult job of proving prejudice. I mean, I can't disagree with Your Honor. Well, doesn't that kill your ineffective assistance to counsel argument? Well, not necessarily because, I mean, I believe he was saying that he had witnesses he could present at trial. I mean, I understand that we don't know what would have happened had he gone to trial. But I think one of the interesting things that, I don't know, that I read when I was working on this is that, if we look at the practical side of what happens, I mean, here he's been through all these evidentiary hearings. He's had appeals to the Superior Court. He's had appeals from the PCRA, which went to the Superior Court of Pennsylvania. And the whole thing would have been a lot simpler and cleaner had his attorney withdrawn the plea at that point, let him go to trial, and that would be the end of it. Of course, if he was found guilty, then we would go through the whole process again. So, I mean, I know what the transcript said. Then you'd have Lafler. He'd be here arguing Lafler with more support. Right. I see my time is almost up. I probably would have written my brief the same way the Commonwealth did. But this is what I feel that the appellant's argument should be. Thank you so much, Your Honors. Can I just ask, just reading with your experience in similar situations, is there any argument that his counsel was just sort of hoping that maybe results would be better from the sentencing court and just wanted to see where the sentence was going to go before trying to withdraw? Well, I would say no, because I believe counsel knew at that point that his sentence was going to be a lot higher than she or he had originally thought. Thank you. Thank you. Mr. Fogle? Good morning. Matthew Fogle, Franklin County District Attorney for the Commonwealth of Pennsylvania and the Attorney General of Pennsylvania. If I could pick up on that last question. I think that I actually have the pre-sentence report from that day. Typically what happens is the pre-sentence report is reviewed by defendant and trial counsel at that time. This is the pre-sentence report for the offense on which he was sentenced and from which this habeas is taken? Yes, sir. All right, because there was controversy over the PSR of the prior offense, which the sentencing judge obviously gave considerable weight to. That's correct. This is the one for the burglary, et cetera, charges. And what typically happens is the probation department makes a recommendation as to what the sentence should be to the court. And they did so in this one. The court did not follow that recommendation or did not adopt that recommendation, certainly then ended up giving an aggravated range sentence. I believe this is a matter of – Because as a matter of practice, do the parties know what the probation officer's recommendation is to the court that is provided pursuant to the PSR? Yes. I believe this matter, as the court's already discussed, is a matter of reliance upon the record and the determinations made by the trial court. As the appellant in his brief has already noted, deference is given to the trial court's factual findings, absent some clear and convincing evidence to the contrary. I'm unaware of any such evidence that would suggest that those findings should be disrupted. I do not believe that trial counsel was deficient. I believe this is actually good advice when presented with the new pre-sentence report. And after reviewing that, knowing that the trial judge may incorporate that, nonetheless, when in the context of a discussion about the potential withdrawal of the plea, she reminded the appellant of the fact that if he did go to trial, the burglary charge would be back on the table with obvious more severe sentencing ramifications with that. So not only do I think it was not deficient, I believe it was actually good advice for her client. That's all I have. There was, again, now you see nothing in the transcript that would verify, and I guess it was already adversely determined to keep, any of the five complaints he makes about the toll-free or in terms of what he was informed. I'm sorry? I'm sorry. I think he raises five claims in his petition. You see none that all were adversely determined in the lower court to him on a credibility basis. Correct. I believe. All the complaints about deficiencies and what he was told. That's correct. Okay. That's all I have. Any other questions? Thank you. Thank you. Thank you very much, Mr. Fogle. Mr. Levin, do you have rebuttal? I have nothing further, Your Honors. Thank you very much, counsel. We appreciate your hopeful arguments. We'll take the matter under advisement, and we'll ask the clerk to adjourn the proceedings.